JAMES DALZELL'S SON & Co., Limited, *v.* THE DANIEL KAINE.

*(District Court, W. D. Pennsylvania. August 5, 1887.)*

1. COSTS—TAXATION—DEPOSITIONS—COMMISSIONER IN ADMIRALTY.
   The provisions of section 824, Rev. St., allowing the taxation of $2.50 "for each deposition taken and admitted in a cause," does not apply to testimony taken before a commissioner to distribute the proceeds from the sale of a vessel in the registry of a court of admiralty.

2. MARITIME LIEN—ADVANCES AT HOME PORT.
   A bank discounting a note for a steam-boat, or making her a general loan at her home port, has no lien against the vessel, either under the general maritime law, or the Pennsylvania act of April 20, 1858, relating to boats navigating the rivers Allegheny, Monongahela, or Ohio.

3. SAME—WAGES—STEAM-BOAT CLERK.
   The Pennsylvania act gives no lien to a clerk who performs none of his duties on board the steam-boat, but wholly on shore.

4. SAME—TOWAGE—HOME PORT.
   Nor does the act give a lien for towing service at the home port.

5. SAME—SEAMAN'S BOARD.
   One who boards a hand while engaged in taking care of disabled barges which had been in the tow of a steam-boat, but which she had left behind her at a port in another state, has neither a maritime lien, nor a lien under the Pennsylvania act, against the steam-boat.

6. SAME—MATERIAL AND LABOR.
   One who, upon the order of the master, provides the material for, and does work on, a pair of chimneys for a steam-boat, has no lien for the value thereof, under the Pennsylvania act, where the chimneys were not delivered or completed, and no work was done on the boat; work having been stopped by order of the master, on account of the seizure of the boat by the United States marshal.

In Admiralty. *Sur* exceptions to commissioner's report, filed May 12, 1887.

*W. A. Lewis, Albert York Smith, G. W. Williams, S. A. Will, Barton & Sons, Knox & Reed,* and *Wm. L. Bird,* for the several exceptants.

Acheson, J. 1. The disallowance of the proctor's claim to fees is approved. I think it clear that the provisions of section 824, Rev. St., allowing the taxation of $2.50 "for each deposition taken and admitted in evidence *in a cause,*" does not apply to testimony taken before a commissioner appointed to make distribution of a fund in the registry of a court of admiralty arising from the sale of a vessel. *Stimpson v. Brooks,* 3 Blatchf. 456; *Nail Factory v. Corning,* 7 Blatchf. 16. It has never been the practice in this district, or (so far as I am advised) elsewhere, to allow the taxation of such fees upon testimony taken in such collateral proceeding.

2. If the Duquesne National Bank, at the request of the master of the Daniel Kaine, had paid the wages of the boat's crew, as was done in the case of *The William F. Safford,* 1 Lush. 69, the bank's claim to subrogation to the rights of the crew might, perhaps, have prevailed, notwithstanding the advance was made at the home port. But the proofs, I think, are insufficient to bring the bank's case within the principle invoked. It appears that on the occasion in question, on the application of R. W. Cowan, the master of the boat, the bank discounted a note for $325, drawn by the steamer Ben Wood and owners to the order of the steamer Daniel Kaine and owners, and indorsed "Steamer Dan'l Kaine & Owners. R. W. Cowan, Captain." The Daniel Kaine kept a running account at the bank, and the proceeds of the discount were passed to the credit of the boat generally. Mr. Patterson, the cashier of the bank, testifies that when Mr. Cowan presented the note he stated that the purpose of the discount was to pay off the crew. But Mr. Cowan testifies directly to the contrary. He most positively denies that he made such statement. It seems that all the crew except the engineer, had been paid off three days before the note was discounted; and, in fact, no part of the money realized from the discount was used to pay the crew, but it was all applied to another purpose. All the surrounding circumstances, then, tend to confirm Capt. Cowan, and to show that Mr. Patterson is mistaken in his recollection.

3. The services of Edwin F. Woods, in keeping the books of the Daniel Kaine, were performed on land, at the home office of the boat. He was not a member of the crew, and rendered no service on board the boat. Certainly, he was not a "clerk" within the meaning of the Pennsylvania act of April 20, 1858, relating to boats navigating the rivers Allegheny, Monongahela, or Ohio. *The Short Cut,* 6 Fed. Rep. 630. Under this act, only persons employed on board the boat have a lien for their wages. Mr. Woods was not so employed. It has more than once been held that this act is not to be extended by construction so as to embrace claims not within its express terms.

4. The towing services rendered by the steamer Twilight to the Daniel Kaine having been performed at the home port of the latter boat, the general maritime law gives no lien therefor, and a claim for such a service is not within the provisions of the Pennsylvania act. *The Bob Connell,* 1 Fed. Rep. 218.

5. It is not satisfactorily shown that the master of the Daniel Kaine made the contract with John Robrecht for "boarding George Taylor," or for "hauling rope;" but, if he did, I do not see that the contract was a maritime one. Ben. Adm. §§ 212, 213. Besides, Taylor was not then, properly speaking, in the employ of the steam-boat, but was engaged in taking care of two disabled barges which had been in the tow of the boat, but which she had left behind her at Wheeling. The services of Robrecht, then, were not rendered directly to the steam-boat, and did not inure to her benefit. Possibly, he may have a claim against the owners of the Daniel Kaine, but he cannot proceed *in rem* against the boat, or the fund derived from the sale thereof.

6. The master of the Daniel Kaine ordered from D. W. C. Carroll & Co., Limited, a pair of chimneys for the boat, and the work thereon had progressed almost to completion, when it was stopped by order of the master, on account of the seizure of the boat by the marshal under the process of this court. No work whatever was done on the boat, and the chimneys have not been delivered. A lien for the value of the materials used and work done on the chimneys is claimed under the Pennsylvania act already referred to. But it was held by Mr. Justice NELSON that in the case of a contract with a material man, or one for repairs, the liability of the vessel arises from the actual furnishing of the supplies, or the making of the repairs, and that the party claiming damages from the breach of contract by the refusal to accept or permit performance must look to the master or owner personally, and cannot maintain an action *in rem* against the vessel. *The Pacific,* 1 Blatchf. 570; *The Cabarga,* 3 Blatchf. 75. These cases, although arising under the general maritime law, furnish a safe rule to follow here; for the claim of D. W. C. Carroll & Co., Limited, is really for damages for breach of contract, whereas the lien given by the Pennsylvania act is "for and on account of work and labor *done,* or materials *furnished,* by boat-builders, * * * boiler-makers," etc., "in the building, repairing," etc., "of such ships, steam or other boats or vessels." 1 Purd. Dig. 126.

I am of the opinion that in rejecting the several above-mentioned claims the commissioner committed no error. And now, August 5, 1887, the exceptions to the commissioner's said report are overruled, and the report is confirmed absolutely.